Moojbe, J.
At the May term, 1890, of the Court of Common Pleas of Putnam County, O., the grand jury found and presented to the court the following indictment:
The State of Ohio, Putnam, County, ss. :
“ In the Court of Common Pleas of Putnam County, Ohio, of the Term of May, in the year of our Lord one thousand eight hundred and ninety, the jurors of the grand jury of the county of Putnam and State of Ohio aforesaid, good and lawful men, duly empanelled, tried, sworn and charged to inquire of the crimes and offenses committed within the body of the said county of Putnam, in the name and by the authority of the State of Ohio, on their oaths aforesaid, do find and present that Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, late of said county, on or about the seventeenth day of March, in the year of our Lord one thousand eight hundred and ninety, in the county of Putnam aforesaid, then and there being in and upon one Arthur Henry then and there being, unlawfully and forcibly did make an assault, with intent then and there forcibly and by violence, and by putting him, the said Arthur Henry, in fear, to take from the person of him, the said *498 Arthur Henry, and against the will of him, the said Arthur Henry, the money and personal property of great value of him, the said Arthur Henry, and thereby then and there the said Arthur Henry to rob, and the money and personal property aforesaid of him, the said Arthur Henry, to steal, take and carry away; and that'the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, then and there did attempt unlawfully, forcibly, and by violence, and by putting the said Arthur Henry in fear, to take from the person of the said Arthur Henry, and against the will of the said Arthur Henry, the money and personal property of great value of him, the said Arthur Henry, with the intent thereby, then and there, the said Arthur Henry to rob, and the money and personal property aforesaid to take, steal and carry away; and that the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, a certain pistol then and there loaded and charged with gun-powder and one leaden bullet, which said pistol, they, the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, then and there had and held, then and there unlawfully, purposely, and whilst engaged in said attempt to perpetrate a robbery in and upon the said Arthur -Henry, as aforesaid, did discharge and shot off, to, against, and upon the said Arthur Henry, with the intent, then and there, the said Arthur Henry, unlawfully and purposely, to kill and murder; and that the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, with the leaden bullet aforesaid, so as aforesaid by them, the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, by force of the gun-powder aforesaid, then and there discharged and shot out of the pistol aforesaid, then and there unlawfully, purposely, and whilst engaged in said attempt to perpetrate a robbery in and upon the said Arthur Henry, as aforesaid, did him, the said Arthur Henry, strike, penetrate- *499 and wound with the intent, him, the said Arthur Henry, unlawfully and purposely to kill and murder, thereby then and there giving to him, the said Arthur Henry, in and upon the left side of the body of him, the said Arthur Henry, one mortal wound of the length of one inch and of the depth of teu inches of which said mortal wound the said Arthur Henry then and there instantly died.
“ And so, the jurors aforesaid, do say, that the said Lafayette Stoops, Joseph Shoemaker and Edward Blair, otherwise called Joseph H. Hill, him, the said Arthur Henry, in the manner and by the means aforesaid, unlawfully, purposely, and in attempting as aforesaid to perpetrate a robbery, did kill and murder contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.”
To this indictment Edward Blair interposed—
1. A motion to quash the indictment, which was overruled by the court.
2. A plea in abatement, which plea was demurred to by the state, and the demurrer sustained.
3. A demurrer to the indictment, which was overruled by the court.
Exceptions were severally noted to the rulings of the court.
The defendant Blair then entered his plea of not guilty.
At the October term, 1890, of said court, Blair was put upon trial, convicted of murder in the first degree, and received the sentence of the court.
It is now sought to reverse the judgment and sentence of the court below.
The errors assigned are numerous, and I will notice 'those that are especially relied upon for a reversal.
It is unnecessary to make mention of the motion to quash, as the questions sought to be raised by it are more properly presented in the plea in abatement and demurrer to the indictment.
*500 A mere statement of the causes set out in the plea in abatement is sufficient to show that the demurrer to it was properly sustained. They are:
That it does not appear from the record that the said indictment was found by the grand jury duly drawn and served. That the record does not show that the said grand jury was drawn in the presence of the sheriff or deputy sheriff.
That the record does not show that the grand jury was regularly drawn from the box as provided by law. That the record does not show that the said grand jury was drawn at the time and place prescribed by the statutes.
There is no claim made that the grand jury which found the indictment was regularly drawn; it is simply claimed that the record docs not show that. We do not understand that each particular case requires the record of the drawing and impanelling of the grand jury to be made a part of it. There is no claim made but what the grand jury finding the indictment was composed of electors qualified to act.
In Huling v. State, 17 Ohio St. 583, the court hold “mere irregularities in selecting and drawing grand juries, which do not relate to or affect their qualifications as such, must be taken advantage of, if at all, by challenge for cause, and cannot be so pleaded in abatement.”
In the opinion Judge Welch has this to say:. “It is important to the defendant that he should not be subjected to a trial except upon an indictment found by a jury composed of good and lawful men ; but provided if they are such good and lawful men, it is matter of no interest to him in what manner they are selected and drawn.”
In'the case at bar it is not even claimed that the grand jurors were irregularly drawn; neither is it claimed that they were not “good and lawful men” qualified to act as such jui’ors —merely the want of a record to show that they were not properly drawn. We are at a loss, under the rulings of our supreme court, to know upon what grounds this plea in abatement could have been sustained.
*501 The next claim made is that the court below erred in overruling the demurrer to the indictment.
The grounds of the demurrer are that two different, separate and distinct crimes are charged in one find the same count; also that the indictment is bad for duplicity.
The indictment is found under section 6808, Rev. Stat., which is as follows :
“ Whoever purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree, and shall suffer death.”
By reference to the indictment, it appears that it undertakes to charge Edward Blair, and others indicted with him, with murder in the first degree, committed while they were attempting to perpetrate .a robbery. The crime of robbery is defined by section 6818, Revised Statutes, which reads as follows :
“ Whoever by force or violence, or by putting in fear, steals and takes from the person of another anything of value, is guilty of robbery, and shall be imprisoned in the penitentiary not more than fifteen years, nor less than one year ; and whoever otherwise than by force and violence, or by putting in fear, shall steal and take from the person of another anything of value, shall be deemed guilty of poket-picking, and shall be imprisoned in the penitentiary not exceeding five years, nor less than one year.”
And section 6821, Revised Statutes, provides, “ whoever assaults another with intent to kill, or to commit rape, or robbery upon the person so assaulted, shall be imprisoned in the penitentiary not more than fifteen years, nor less than one year.”
And an assault is defined by section 6823, Revised Statutes, which reads as follows :
“ Whoever unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, *502 shall be fined not more than two hundred dollars, or imprisoned not move than six months, or both.”
In order to charge murder , in the first degree, committed while the accused is attempting to perpetrate a robbery, the indictment must allege facts sufficient to show an attempt to commit the robbery mentioned and defined in section 6818, for the language of section 6808 indicates that this “attempt to perpetrate a robbery ” takes the place of and dispenses with “ deliberate and premeditated malice.” It would not be sufficient simply to set out that the accused was “ attempting to perpetrate a robbery.” This would be a mere conclusion. The acts which the state claims amount to such attempt must be pleaded. Lamberton v. State, 11 Ohio, 282.
The indictment, must state facts sufficient to show that the killing occurred while the accused was engaged in the “attempt to commit robbery.” It does this; it does nothing more.
An assault with intent to commit a robbery was defined in section 6821 is an attempt to perpetrate a robbery.” So that, conceding for the sake of the argument that omitting the alleged independent charge of assault with intent to rob, the indictment sufficiently charges an “ attempt to perpetrate a robbery,” how is plaintiff in error injured by two averments of the same attempt, or two averments of some of the facts amounting to such attempt to rob.
Not all indictments charging two offenses in one and the same coun*t are bad. Breese v. The State, 12 Ohio St. 146.
The crime of murder in the first degree, committed in an attempt to perpetrate a robbery, necessarily includss within it an assault, and an assault with intent to commit a robbery, whether such assault be formally or specially averred or not. It also includes all degrees of homicide below the first, unless perhaps the second degree is not included; it also includes assault and battery, and the crime of robbery would be included in it, and if all these are ineluded, the plaintiff in error was not injured by setting any of them out by special *503 averment. Such averments may be regarded as surplusage only.
The court below did not err in overruling the demurrer to the indictment.
The next assignment of error is that the court below erred in overuling the challenges for cause to the jurors D. H. Grove, Charles Beard and Stephen Crow.
The question is best made for the plaintiff in error in the case of Charles Beard, and it will be only necessary to look to the action of the court in overruling the challenge as to him, because, if he was properly permitted to sit as a juror, there can be no question but what the others were. The juror Charier Beard in his examination says that he lives in Grcensburg township, and about nine miles from Iiartsburg, the place where the crime was committed. He says he has formed an opinion as to the guilt or innocence of the party that was on trial, and then he was asked :
Q. “ Did you talk with any one who pretended to know any thing about the transaction ? ” A. No, sir.
Q. The newspaper reports you saw in the county papers? A. Yes, sir.
Q. Did they pretend to give the testimony of any of the witnesses ? A. I think not.
Q. What opinion you formed is founded on hearsay ? A. Yes, sir.
Q. Could you sit in this jury-box on your oath, as a juror, in this case, and notwithstanding what you have read, could you render a fair and impartial verdict upon the evidence, as you will hear it in this trial, and not be influenced by anything you have heard outside, as between the State of Ohio and this defendant? A. I could.
Then came the cross-examination by Mr. Long—
Q. You live at Greensburg Township, do you ? A. Yes, sir.
Q. Not far from where Shoemaker lives? A. No, sir.
*504 sir. Q. And'you read about this case in the papers? A. Yes, T
This question was then asked.
Q. With that opinion, if you sat as a juror in this case, and listened to the testimony, I will ask you if it would not take a little more testimony to make you find a verdict against than with your opinion? A. Yes, sir; it would.
Q. A little more positive and greater ? A. Yes, sir.
Q. When you say you could render an impartial verdict, you mean to say you could find him innocent or guilty? A. Yes, sir.
<2. You would incline a little more to the side you had believed in than to the other side, would you? A. I would incline to the side the most evidence was on.
Q. It would require a little more against your opinion than with your opinion, would it ? A. Yes, sir.
By the Court — Q. If you were sworn as a juror to sit in the box and decide this case by the evidence as you heard it from the witnesses, would you allow that opinion to influence you at all? A. No, sir.
By the Court — Q. Would you be able to render an impartial verdict? A. Yes, sir.
(Thereupon the court overruled the challenge.
It does not appear that the court found, or was satisfied that Beard would be other than an impartial juror, and if the court accepts a juror, such acceptance is sufficient to show that the court was satisfied that he could render an impartial verdict, so that the claim made by the defendant below, as to the juror, or the acceptance of him, and permitting him to act as a juror, comes clearly within the rule of the law laid down by the Supreme Court. McHugh v. State, 42 Ohio St. 160; Doll v. State, 45 Ohio St. 445.
The next assignment of error is that the court erred in sustaining the challenge of the state to one of the jurors. One Thorn ell was called as a juror, and upon examination he answered that he would not render a verdict of guilty upon *505 any but direct testimony. That he would not render such a verdict on circumstantial evidence, let it be ever so clear and convincing. The effect of permitting such juror to act would be to compel the state to make its case by direct and positive evidence. No matter how satisfactory and convincing the proof might be of circumstances warranting a conviction, the state would be compelled to procure a conviction to prove its case by direct evidence. The state should be placed in no such dilemma. It had the right to have a fair jury as well as the defendant, and should not be handicapped by permitting a juror to sit whose verdict would not bo rendered under the rules of law. Here was a juror who said he would not render a verdict for the state under circumstantial evidence — evidence that may be just as convincing and conclusive as direct proof — evidence upon which the state very frequently has to rely to secure a conviction. Certainly no such juror should be permitted to remain upon the jury. The court below very properly sustained the challenge made by the state.
The next assignment, of error to which our attention is called, is to the action of the court in sustaining an objection made by the state to the admission of certain evidence offered on the part of Blair.
The record discloses that one William Day was called as a witness on the part of the prisoner. It appears that Day was confined in the jail, and in that portion of it occupied by the alleged accomplices of Blair, Stoops and Shoemaker; and after some preliminary questions were answered showing his, Day’s, position in the jail, as also that of Stoops and Shoemaker, the following inquiry and statement were made :
Q. I will ask you what, if anything, you remember occurring on one evening after you had retired, in reference to Stoops and Shoemaker ?
Objected to by the State.
Mr. Long. — We propose to prove, your Honor, that while this witness was in the cell and apparentlly asleep, that Stoops and Shoemaker, who were together in the jail, waited until he *506 was asleep; that Shoemaker, came to him and shook him to sec whether he was asleep or not, and that then they went a short distance and got into a corner and held a conference together, and in the course of the conference they referred to the fact that Blair was a penitentiary bird and they could put this crime upon him.
Ques. by the Court. — Did you ask Stoops or Shoemaker anything about that? (Mr. Long) A. No, sir.
Thereupon the court sustained the objection, to which defendant excepted.
It is claimed that this went to the effect that Stoops and Shoemaker had conspired together to put this crime upon Blair. It appeal’s to us that the objection was properl)’ sustained. The inquiry is as to what occurred at the time. What occurred at the time taken in connection with what it was stated by counsel that they expected to prove by this witness, would include what acts were done and what was said by Shoemaker and Stoops, or either of them. Counsel for Blair stated that it was proposed to prove that while this witness was in the cell, one of them came to him and shook him to ascertain if he was asleep, and that they then talked together. That was an act, and aside from the conversation between Stoops and Shoemaker is immaterial. There is no rule better settled than that the party who offers testimony,’ before he can claim anything against the action of the court iu excluding it, must state what he expects to prove. What should have been proved was, that if these parties were combining together to put this crime upon Blair, what was said by Shoemaker and what was said by Stoops,that is, what was their conversation, providing it was otherwise admissible. It is claimed that in the course of the conference, or in some portion of the conversation, they referred to the fact that Blair was a penitentiary bird and they could put this crime upon him. This statement by counsel of what they expected to prove,.does not go on and state that they expected to prove what Stoops said or what Shoemaker said. In addition, no conversation between *507 the two was enquired for. Aside from that there is another objection. The State is not to be bound by any conversation that was had between Stoops and Shoemaker. If the plaintiff in error was desirous of ascertaining what that conversation was, he could have inquired of Stoops or Shoemaker, or both. They were both witnesses, sworn and examined in this case prior to the calling of this witness Day. They were witnesses for the State, and the plaintiff in error had ample opportunity and should have asked them concerning the conversation-sought to be proved, and should have fixed the time and place, and called their attention directly to .the conversation, and thus have laid a foundation for impeachment, or contradiction if they denied it. Nothing of this kind was done.
It is claimed that the verdict “guilty of murder in the first degree,” is not sustained by the evidence.
1. Because the evidence on behalf of the state was almost solely the testimony of accomplices.
2. Because the evidence tending to provean alibi, was sufficient to, create a reasonable doubt of the defendant’s guilt, when taken in consideration with the other testimony in the case.
A very brief review of the facts will show how unwarranted these claims are. •
The record discloses that Arthur Henry, the murdered man, was killed at Hartsburg, the place of his residence, on the night of March 17th, 1890. That: for some time prior.to that Blair, who was an escaped convict from the Ohio penitentiary, was stopping with Shoemaker, some two miles from Hartsburg, under the assumed name of J. H. Hill. Stoops was at the same place. On the evening in question, the three, Blair, Stoops and Shoemaker, went to Hartsburg — evidently to burglarize a store. The party arrived at Hartsburg about eight o’clock. Arthur Henry was the express agent in the village, and also engaged in the store with his father-in-law, A. H. Marcy. Blair discovered through the window that Marcy and Henry had the money taken in during the day *508 amounting to near $100. This he concluded to have. It was in Henry’s possession.
Marcy and Henry lived together, and weut to their residence after counting the money and closing up the store. Upon the solicitation of Stoops, under the pretense of purchasing some goods, Henry returned to the store, unlocked it, and walked in, followed by Blair. After passing some distance through the store, Henry attempted to strike a light, when Blair, drawing his revolver, demanded his money. Henry attempting to resist the demand was shot and killed by Blair. The three retreated to Shoemaker’s, where Blair attempted to hide his revolver by putting it in the stove. On the night of the 18th of March, Blair left the neighborhood.
That Blair and J. H. Hill is the same person is not in dispute. In making his retreat from the store Blair lost his hat. When found it was proved to be similar to the one that had been worn by J. H. Hill. Three men answering the description of Blair, Shoemaker and Stoops were seen approaching Hartsburg a short time before the murder, and tlje tracks of three persons were found in the field across which they retreated. If human testimony is to be believed, Blair was at Shoemaker’s and in the vicinity of Hartsburg on the 17th of March, 1890. On the afternoon of that day Blair, known as Hill, visited a young lady named Ewing, who resided with her mother and step-father, named Pendergrast. The 17th of March was St. Patrick’s day, and because it was St. Patrick’s day, Blair furnished Pendegrast money to buy whisky and beer. This fixes the date, for in the language of the witness “ no true Irishman ever forgets St. Patrick’s day.” In addition to this Blair visited the same young lady the day following, being the 18th, and upon the rough paper with which the cabin was lined, left his farewell tokens of affection dated March 18th, 1890, and signed J. H. Hill.
If the testimony of Stoops and Shoemaker was uncorroborated, it would not be in the province of this court .to disturb the verdict — nor would it do so. The evidence of these ac *509 complices, however, is very fully corroborated. Some of tbe corroborating circumstances I have mentioned.
Long & Long, attorneys for plaintiff in error.
John P. Bailey, prosecuting attorney, and A. V. Watts for the state.
The defendant sought to prove that on the 17tb of March, 1890, be was at East Monroe, in Highland county. The witnesses called to prove this were either close relatives, or of unsavory reputation, or both. Two of the witnesses were criminals from the Ohio penitentiary, and one from the Highland county jail. The bad reputation of all, or nearly all of defendant’s witnesses was'established by what appears at least to be good reputable persons. No jury would have been warranted in believing the testimony by which it was sought to prove that Edward Blair was elsewhere than at Hartsburg on the nigbt of the 17th of March, 1890.
We find no error in the record. ,
The judgment of the court below is affirmed.